IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGOT CAMP, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JEFFREY P ALEXANDER et al.,<br><br>    Defendants.                     / | No. C -13-03386(EDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' EX PARTE REQUEST TO RESTRICT DEFENDANTS AND THEIR COUNSEL FROM COMMUNICATION WITH PUTATIVE CLASS MEMBERS** |

**I.    Introduction**

    The parties in this putative wage-and-hour class action against a pediatric dental practice have several issues before the Court. Plaintiffs request that Defendants be enjoined from further contacting putative class members, after Defendants provided their employees with a letter explaining their position on the lawsuit and providing an opt-out declaration for employees to sign. Plaintiffs argue that this letter was coercive and that the signed opt-out declarations are invalid. Defendants contend that the letter is merely a statement of opinion and that their employees have the right to opt out from the litigation and withhold their personal information from Plaintiffs' counsel. The parties also have several discovery disputes that depend in part on the Court's ruling on the appropriateness of the letter and the waivability of certain claims in the case. The Court will first address Plaintiffs' request to enjoin Defendants from further communications with the putative class, and then address the discovery disputes.

**II.    Plaintiffs' Ex Parte Request to Enjoin Defendants from Further Communication with Putative Class Members (Docket Nos. 110-112)**

### A.     Background and Content of the Employee Letter

Several former employees of Defendants' dental practice filed this wage-and-hour suit. Although the case is at a relatively early stage, it has been contentious and there has been extensive motion practice. The California Department of Labor Standards Enforcement, which had issued citations against Defendants, eventually dismissed those citations and specifically empowered Plaintiffs to pursue all claims against Defendants. Defendants' practice, the Youthful Tooth, provides dental care primarily to low-income children on Medicaid. Declaration of Mary Jo Salazar ISO Defendants' Opposition ("Salazar Decl."), Docket No. 118-1, para. 2.

On March 3, 2014, Plaintiffs filed an ex parte request to enjoin Defendants, the dental practice and its owners, from communicating with potential class members about the lawsuit. Docket Nos. 110-112. This request followed Plaintiffs' discovery that on February 20, 2014, Defendants sent their employees a letter describing the lawsuit and its potential negative effect on the Defendants' dental practice.

Plaintiffs argue that this communication was misleading, improper, and coercive and that Defendants meant to discourage employees from joining the class. Defendants provided an opt-out declaration from with the letter and have apparently received a number of declarations from potential class members stating that they do not want to be involved in the litigation or have their information shared with Plaintiffs. Mot. at 1. Plaintiffs request that Defendants and their counsel be immediately enjoined from any communications with putative class members without prior Court approval, and that the Court issue a curative notice to the class and exclude any of the employee declarations provided in response to the letter. On March 6, 2014, the Court ordered that Defendants respond to Plaintiff's request and that they refrain from contacting potential class members about the case until the Court had ruled on the issue. Docket No. 116. Defendants filed an opposition on March 14, 2014. Docket No. 118.

According to Defendants, the practice has a close-knit group of employees and many have expressed concern over the lawsuit and asked what they could do to help. Id. ¶ 5. Defendants state

1 that they prepared the letter at issue ("Employee Letter" or "Letter") in response to these inquiries.
2 Id. The letter was handed out to employees by non-management staff at the practice's two locations
3 on February 20 and 21, 2014. Id. There was no one-on-one contact between Defendants or their
4 counsel and staff to discuss the letter. Employees who chose to return the included opt-out
5 declaration did so in sealed envelopes collected by staff, and Defendants maintain that they do not
6 know who did or did not return the declarations. Id. ¶ 6.

7 The Letter starts by saying that Defendants have been defending against the lawsuit for
8 almost a year, and refers to Plaintiff Margot Camp by first name. The Letter states that Defendants
9 "believe the lawsuit is motivated by greed and other improper factors," and that "Margot's attorney
10 is seeking a very large sum of money by attempting to convince other employees to join the
11 lawsuit." Docket No. 109-1 at 3. It goes on to say that the cost of the defense has had a significant
12 adverse effect on the practice and that the practice cannot afford to pay the claims or settle for a
13 large amount of money, and that a long legal battle would "*jeopardize the ongoing viability of the*
14 *practice*." Id. at 4 (emphasis added). The Letter describes the practice's low collection rate and its
15 Medicaid population and discusses how difficult it is to run a practice during "these hard economic
16 times." Id. at 5.

17 The Letter also states that Plaintiffs' attorney will seek employees' private information and
18 payroll information, and "may want to take your deposition, subpoena you to testify in court and/or
19 otherwise involve in the lawsuit against this practice." Id. The Letter describes the impact the
20 lawsuit has had on Defendants personally, and other stressors in their lives, including caring for
21 aging and infirm mothers (one recently placed in a mental institution) and trying to keep all the staff
22 employed. Id. at 4-5. The Letter states: "*This final blow could result in the closure of this long*
23 *running business*." Id. at 5 (emphasis added).

24 In a section titled "What You Can Do," the letter says that if any employee wants to support
25 Plaintiff Camp and participate, she is free to do so, and that if enough employees join in, the Court
26 will certify the case as a class action, which "means all employees who wish to seek some money
27 out of this will be suing us . . . *Money may be awarded at some future point, assuming this dental*
28 *practice is still in business. We are confident that this practice will not be able to survive such an*

3

1  *event*." Id. at 5 (emphasis added).  "If you do not want to support Margot Camp and the other
2  plaintiffs and you do not want to participate in the lawsuit, you can make that clear now by
3  competing the attached Opt Out Declaration and returning it in the attached envelope." Id.  The
4  letter concludes by stating that employees are free to make this decision and will not be subject to
5  any retaliation, and a note that the letter represents the company's view of the lawsuit and that it is
6  "unlawful for the company to retaliate against employees who choose to participate in this case." Id.

The accompanying declaration states the declarant's awareness of the lawsuit and that by signing the declaration, she is giving up the right to recover wages and penalties; that she opts out of any class action litigated by Plaintiffs; that she does not want any personal information provided to Plaintiffs; and that she signed this Declaration voluntarily without pressure or fear of retaliation. Docket No. 109-1 at 7.

### B. Legal Standard

The Court may limit communications between the parties and putative class members before class certification, but such limits are bounded by the First Amendment.  See Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981).  In Gulf Oil, the Supreme Court noted that because class actions present opportunities for abuse and problems in case management, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Id.  The Court went on to hold that:

> an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighting – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

452 U.S. at 101-02.

In Gulf Oil, the district court had issued an order requiring prior judicial approval of virtually all communications.  The Supreme Court concluded that such an order was an abuse of discretion, because there was no record to support such a sweeping restraint, other than the district court's reference to a recommendation by the Manual for Complex Litigation.  Id. at 103-04.  The Court

4

concluded that "the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the rules. There certainly is no justification for adopting [the order] in the absence of a clear record and specific findings of need." Id. at 104.

Courts have noted that "a unilateral communications scheme . . . is rife with potential for coercion." Kleiner v. The First Nat'l Bank of Atlanta, 751 F.2d 1193, 1202 (11th Cir. 1985). Courts have also observed that an ongoing employer-employee relationship is particularly sensitive to coercion. Wang v. Chinese Daily News, 236 F.R.D. 485, 488 (C.D. Cal.) (rev'd on other grounds by Wang v. Chinese Daily News, 709 F.3d 829 (9th Cir. 2012)). The best practicable notice envisioned by Rule 23 "conveys objective, neutral information about the nature of the claim and the consequence of proceeding as a class." Id. at 1203 (citing In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977)). Where communications are misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit, they may be limited by the court, but the orders must be grounded in good cause and issued with a heightened sensitivity for the First Amendment. Id. at 1203, 1206; see also Burrell v. Crown Central Petroleum, 176 F.R.D. 239, 244-45 (E.D. Tex. 1997). The Kleiner court laid out four criteria for evaluating the existence of good cause to support an order limiting communications between a class and class opponents: 1) the severity and the likelihood of the perceived harm; 2) the precision with which the order is drawn; 3) the availability of a less onerous alternative; and 4) the duration of the order. 751 F.2d at 1206.

**C.  Discussion**

Plaintiffs argue that Defendants' communication with putative class members is profoundly improper because it misrepresents the facts and misleads putative class members. Defendants contend that the letter was not improper, misleading, or inherently coercive and that it accurately and fairly summarized the lawsuit and its potential effect on Defendants' business.

Plaintiffs catalogue what they see as the misrepresentations in the letter: the accusation that

5

the suit is motivated by greed and "other improper factors and that Plaintiffs' counsel is seeking "to recover substantial attorney fees for himself"; the assertion that after a Department of Labor audit, Defendants paid all past wages to employees who were owed them; the failure to disclose that the DLSE issued citations against Defendants and only dismissed them because Plaintiffs were empowered to pursue all of the claims; the assertion that Plaintiffs have refused to mediate or respond to settlement offers; and the claim that Defendants have substantial defenses. Mot. at 3.

Plaintiffs also cite what they claim are coercive and threatening statements in the letter, primarily the repeated assertion that if the lawsuit continues because employees participate in it, the business will close and the employees will lose their jobs. The letter includes several references to the practice's inability to pay a large settlement or maintain a lengthy legal battle, and references to the emotional and financial toll on Drs. Alexander and Salazar, and on their ailing mothers. Plaintiffs also complain that the Employee Letter did not include the name or contact information for Plaintiffs' counsel or a full statement of the claims in the case.

Plaintiffs rely primarily on Kleiner v. First Nat'l Bank, 751 F.2d 1193 (11th Cir. 1985) and Wang v. Chinese Daily News, 236 F.R.D. 485 (C.D. Cal. 2006) (rev'd on other grounds by Wang v. Chinese Daily News, 709 F.3d 829 (9th Cir. 2012)). In Kleiner, the Eleventh Circuit upheld a district court's invalidation of opt-out forms obtained through ex parte phone calls to the defendant bank's customers. The court noted that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests . . . [s]uch conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." 751 F.2d at 1202-03. The Kleiner court recognized that in an employer-employee relationship, the risk of coercion and abuse is particularly high when an employer solicits opt-outs from employees. Id.

The Wang court made the same point. In that case, the defendant employer, a newspaper, obtained signed opt-out forms from putative class members during workplace meetings, which the court deemed coercive, relying in part on the extremely high opt-out rate (75-80%, as opposed to a more typical 2% for employment cases). 236 F.R.D. at 488-89. The court noted that "here the relationship is even more potentially coercive [than the one in Kleiner] where Defendants are the

6

1 individuals' employers and there is evidence that implicit and explicit threats were made linking
2 participation in the lawsuit with job security." Id. at 488.

3       Other courts have also noted the potential for coercion in situations where employers contact
4 putative class member employees. See Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509,
5 518 (N.D. Cal. 2010) (Koh, J.) (holding that opt-outs secured at a mandatory meeting between
6 employer and employees were coercive and invalid); Belt v. Emcare Inc., 299 F. Supp. 2d 664, 668-
7 69 (E.D. Tex. 2003) (holding that an employer letter to putative class members was coercive
8 because it suggested that the case could affect their employment and it undermined the purpose of
9 collective action by encouraging employees not to join; a brief assurance that the law prohibits
10 retaliation against those who join the suit was not enough to cure the coercive effect); Abdallah v.
11 Coca-Cola Co., 186 F.R.D. 672, 678 (N.D. Ga. 1999) ("Coca-Cola has not given the Court any
12 reason to suspect that it will attempt to mislead its employees and coerce them into non-participation
13 in this case. But simple reality suggests that the danger of coercion is real and justifies the
14 imposition of limitations on Coca-Cola's communications with potential class members."); Mevorah
15 v. Wells Fargo Home Mortgage, Inc., No. 05-1175, 2005 WL 4813532, at *4 (N.D. Cal. Nov. 17,
16 2005) (Patel, J.) (holding that even accepting the defendant's version of the facts, "it is still
17 reasonable to assume that an employee would feel a strong obligation to cooperate with his or her
18 employer in defending against a lawsuit."); Hampton Hardware v. Cotter & Co., Inc., 156 F.R.D.
19 630 (N.D. Tex. 1994) (defendants' three letters to putative class members asking them not to join the
20 lawsuit were an improper attempt to "reduce the class members' participation in the lawsuit based
21 on threats to their pocketbooks.").

22       Defendants cite In re M.L. Stern Overtime Litigation, 250 F.R.D. 492 (S.D. Cal. 2008) as
23 their primary support. In that case, the defendant in a wage and hour case distributed a survey to its
24 account executives, and all but one of the 83 executives who responded indicated that they did not
25 want to pursue a class action. The survey consisted of five questions, four of which requested a "yes
26 or no" answer and one of which was an estimate of how many hours the executive worked per week.
27 250 F.R.D. at 495. The letter that followed the survey provided an update on the litigation and
28 purported to describe what would happen if the action were certified, stating that "settling for the

7

amount that the Plaintiffs currently demand would severely impact the company's net capital requirements and make it difficult for M.L. Stern to stay in business and out of bankruptcy." Id. It also stated that "[t]here is no denying that you could potentially recover more should you participate in the class. There is also no denying that your recovery could be less should our attorney's arguments prove persuasive or should the class action Plaintiffs recover an amount that would bankrupt the company." Id. The letter than suggests that recipients contact an attorney and gives contact information for both the plaintiffs' counsel and defense counsel. Id. The letter concludes: "Absolutely no adverse actions will be taken against you no matter what you decide to do. We respect the fact that some of you may chose [sic] to take part in the class action and will not harbor any ill will accordingly." Id. The court held that the letter was not, on balance, an improper, misleading, or coercive precertification communication; significantly, however, it ordered that an amended letter be sent that deleted the references to potential bankruptcy. Id. at 500.

Defendants maintain that the Employee Letter is not improper, misleading, or inherently coercive, but rather a truthful statement of the pending lawsuit and Defendants' opinions of Plaintiffs' claims and their likely impact on the dental practice. Defendants try to distinguish the cases cited by Plaintiffs, arguing that there was no one-on-one contact or mandatory employee meetings, as there had been in Mevorah and Wang, and no certified class, as in Kleiner. Defendants cite the high bar for establishing that a coercive situation exists, quoting Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239 (E.D. Tex. 1997): "It is not enough that a potentially coercive situation exists . . . the court cannot issue an order without evidence that a potential for serious abuse exists." 176 F.R.D. at 244. Defendants also cite Keystone Tobacco Co. v. United States Tobacco Co., 238 F. Supp. 2d 151 (D.D.C. 2002) for the proposition that as long as statements are not inaccurate or misleading, "self-serving advocacy" does not alone run afoul of Rule 23(d).

Defendants review the letter paragraph by paragraph, dividing the letter into "true facts," "express statements of opinion," and a somewhat vague third category, "truthful statements and opinions." Opp. at 6-8. "True facts" include Margot Camp's identity as a plaintiff and that the DLSE recently "dismissed all citations and claims against the practice." Id. at 6. While this is true as far as it goes, it does not include the additional fact that the DLSE dismissed the citations

8

1  specifically so that Plaintiffs could pursue all PAGA claims themselves, so it is somewhat
2  misleading by omission. Express statements of opinion include: "We believe that Margot's attorney
3  is seeking a very large sum of money by attempting to convince other employees to join the lawsuit"
4  and "A long legal battle will jeopardize the future of this dental practice," and "We are confident
5  that this practice will not be able to survive such an event." Id. at 6-7. Truthful statements and
6  opinions include "While we continue to try to resolve this case informally, we want to inform you
7  that the high litigation costs alone may jeopardize the ongoing viability of the practice. . . . This final
8  blow could result in the closure of this long running business." Id. at 7. Defendants maintain there
9  is nothing misleading or untruthful in the letter, and point to the repeated assurances that employees
10 will not be retaliated against if they join the lawsuit. Id. at 8.

11       Defendants are correct that many cases cited by Plaintiffs involve more extreme and
12 egregious behavior: Wang and Li both involved coercive in-person meetings with employees and
13 language issues; according to Defendants, the Employee Letter and accompanying opt-out
14 declaration were distributed by non-management staff, and Drs. Salazar and Alexander do not know
15 who has chosen to opt out. Salazar Decl. ¶ 6. In Mevorah, defense counsel contacted members of
16 the potential class directly and provided incomplete and misleading information. 2005 WL
17 4813532, at *1. Such direct contact has not happened here. Defendants also argue that here, unlike
18 in some other cases, Plaintiffs have not provided any declarations from putative class members
19 stating that they were pressured or coerced into signing an opt-out declaration. However, Plaintiffs
20 counter that this is because Defendants have refused to provide any employee contact information.

21       The Employee Letter, a dramatic statement of the potential loss of employment should
22 employees join the lawsuit, is problematic, as is the accompanying opt-out declaration. The caselaw
23 nearly universally observes that employer-employee contact is particularly prone to coercion, and
24 the Employee Letter contains multiple predictions that the lawsuit, if successful, will cause the
25 practice to close, with the obvious consequence that employees would lose their jobs. Although
26 Defendants may be correct that their statements regarding the case are express opinions, an
27 employer cannot simply write "We believe" at the beginning of an inflammatory statement – such as
28 "we believe that this lawsuit is motivated by greed and other improper factors" – and have it be

9

1  immunized as a noncoercive statement. Docket No. 109-1 at 3.  Further, the Employee Letter is
2  entirely one-sided, omitting relevant information regarding Plaintiffs' claims and failing to provide
3  contact information for Plaintiffs' counsel, unlike In re M.L. Stern, on which Defendants rely. See
4  250 F.R.D. at 495.

5  In Wright v. Adventures Rolling Cross Country, Inc., No. 12-982, 2012 WL 2239797, at *5
6  (N.D. Cal. June 15, 2012) (Chen, J.), the defendants, a tour company and its operators, sent several
7  e-mails to potential class members shortly after the suit was filed, criticizing the plaintiffs' lawyers
8  and stating that the company needed former tour leaders' help and saying that if the suit was
9  successful, it could "drive ARCC and other similar organizations out of business." 2012 WL
10 2239797, at *1.  The e-mail concluded by stating "our hope is to discourage the opposing lawyers
11 from pursuing this case.  One of the best ways to discourage the lawyers is for former leaders to
12 state that they would choose not to participate in a lawsuit." Id. at *2.  The e-mails then became
13 more threatening, warning that putative class members' "past transgressions" would become public
14 in the suit and that the plaintiffs' lawyers "risk nothing other than some hours in legal time . . . .
15 Even if you win the case, they pocket the money and you are left with tattered reputations and
16 substantial legal bills." Id. at *2.  Another communication referred to the plaintiffs' counsel as
17 "aggressive and possibly unethical." Id. at *3.  The court took issue with many aspects of the
18 communications, including the comments regarding the motivation of plaintiffs' counsel, and found
19 that they could have a chilling effect on participation in the class action.  It noted that the assertion
20 that "they [plaintiffs' counsel] are interested solely in a payoff . . . while not unusual and fairly
21 clearly an opinion is still problematic.  It is no doubt intended to encourage Plaintiffs and/or
22 potential class members not to participate in the lawsuit." Id. at *5.  Significantly, the court held
23 that "whether they were merely opinions made in good faith is largely unimportant.  The critical
24 question is whether there is a realistic danger that the communications will chill participation in the
25 class action." Id.  Here, Defendants' assertions that the suit is motivated by greed falls into the same
26 category.

27 Courts have also found that omission of detail or the failure to provide information in an ex
28 parte communication can be misleading.  In County of Santa Clara v. Astra USA, Inc., No. 05-3740,

10

1 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010) (Alsup, J.), the court found that a letter sent by the
2 defendant pharmaceutical company to overcharged customers, including supposedly compensatory
3 checks and a waiver, was inappropriate and misleading.  The court noted that while the Ninth Circuit
4 had not yet adopted a standard to determine what constitutes a false or misleading offer to settle,
5 "surely that test is concomitant with the potential for abuse in the communications, including being
6 misled about the strength and extent of their claims.  The putative class members can be misled
7 through omissions and failure to provide enough information, which can include the failure to
8 append the plaintiffs' complaint to a settlement offer."  2010 WL 2724512, at *3.  The court
9 contrasted the situation before it with that in another case, Eshelman v. Orthoclear Holdings, No. 07-
10 1429, 2007 WL 2572349, at *3 (N.D. Cal. Sept. 4, 2007) (White, J.), in which the court found no
11 corrective action was needed where the contact:  1) apprised the putative class about the lawsuit; 2)
12 contained contact information for the plaintiffs' counsel, and 3) included the second amended
13 complaint.  Id.  The Astra court went on to hold that the letter was inadequate to inform the putative
14 class, because it did not even provide an explanation of the plaintiffs' claims, much less the
15 complaint or a relevant Ninth Circuit opinion and neglected to provide the contact information for
16 the plaintiffs' counsel. Id. at *3, *6.  The court held that the releases were invalid. Id. at *6.
17 Similarly, here, no explanation of Plaintiffs' claims, copy of the complaint, or contact information
18 for Plaintiffs' counsel was included in the Employee Letter or the opt-out declaration.

19      In Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509 (N.D. Cal. 2010), Judge Koh
20 made a strong statement against employers obtaining pre-certification opt-outs.  In that case,
21 described briefly above, the defendants held individual meetings with putative class members and
22 presented them with opt-out forms, and obtained signed forms from a substantial majority of the
23 employees.  270 F.R.D. at 512.  The plaintiffs submitted declarations from individuals claiming to
24 have signed the opt-out form even though they did not want to.  The form forbade the release of the
25 signer's name and address to the plaintiffs' counsel and withdrew consent to participate in the case.
26 Id. at 513.  The court stated that the in-person meetings and defendants' failure to provide copies of
27 the opt-out form for employees to take with them, and the filing of so many signed forms, showed
28 that the meetings were "inherently coercive." Id. at 518.

11

Although the defendants in <u>Guifu Li</u> attempted to distinguish the <u>Kleiner</u>, <u>Wang</u>, and <u>Hampton Hardware</u> cases as involving certified, rather than uncertified classes, the court rejected that reasoning: "the underlying rationale of these cases does not depend on the certification of the class but instead on the inherent undermining of the class action process when opt-outs are solicited ex parte." <u>Id.</u>  The court cited the <u>Astra</u> case, discussed above, which invalidated releases obtained through misleading ex parte communications before class certification. <u>Id.</u>  The court went on to state that "*Defendants have cited no case, and the Court is aware of none, where a defendant employer's ex parte solicitation of opt outs from its workers was upheld as a proper communication, regardless of whether the class was certified or not*." <u>Id.</u> (emphasis added).  The court invalidated all of the opt-outs and drafted a notice to potential class members, but did not ban all communications between the defendants and their employees or order disclosure of any such communications. <u>Id.</u> at 519.

After reviewing the parties' briefs and the relevant case law, the Court concludes that although the situation here is not as dramatic as in some other cases, the Employee Letter and the opt-out declaration provided by Defendants are flawed and a curative notice is in order. Regardless of whether the Letter was well intentioned, the communications' one-sidedness discourages participation in the collective action. The Employee Letter omits key information, such as plaintiffs' counsel's contact information and a full description of the claims or the complaint. The accusation that Plaintiffs' counsel is motivated by greed and other improper factors is inflammatory. <u>See</u> <u>Wright</u>, 2012 WL 2239797, at *5 (observing that the defendants' statement that the plaintiffs' counsel was interested solely in a payoff was problematic and was "no doubt intended to encourage" potential class members not to participate in the lawsuit). Most importantly, the repeated warning that the practice would close and employees would lose their jobs if the litigation proceeded is highly inflammatory. Even in <u>In re M.L. Stern Overtime Litigation</u>, the primary case cited by Defendants, the court held that the otherwise neutral communication had to be amended to remove a reference to a potential bankruptcy. 250 F.R.D. at 501. In <u>Wright</u>, the court noted that a good-faith expression of opinion in this context can be barred if there is "a realistic danger that the communications will chill participation in the class action." 2012 WL 2239797, at *5.

The Court also agrees with the Guifu Li court's conclusion that ex parte solicitation of opt-outs by a defendant before class certification is improper. Although Defendants here presented the opt-out declarations via non-management staff, not in one-on-one meetings between managers and putative class members, there is still a significant power imbalance between an employer and its employees. As the Guifu Li court held, "[o]btaining opt-out forms ex parte at this stage of the litigation – before a class has been certified by the Court – unquestionably frustrates the purposes of Rule 23." 270 F.R.D. at 518; see also County of Santa Clara v. Astra USA, Inc., No. 05-3740, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010). In particular, the opt-out declarations here specifically bar the release of the signing employee's personal information to Plaintiffs' counsel frustrates Plaintiffs' ability to pursue claims on behalf of the entire class. The opt-out declarations obtained by Defendants are therefore invalid, and a corrective notice is required.

Counsel for Defendants shall mail the following notice to the putative class members and file a certification that notice was mailed to all relevant employees within three business days of this Order:

> As an employee of The Youthful Tooth, you may be part of a class of workers asserting California and federal employment law rights against the defendants, Dr. Jeffrey Alexander, Dr. Mary Jane Salazar, and The Youthful Tooth Company. The claims relate to alleged underpayment and nonpayment of wages and overtime wages and to missed meal and rest periods. The case is in federal court in the Northern District of California, case number 13-cv-3386 EDL. If you signed an opt-out declaration regarding this class action, please be aware that the Court has invalidated all such opt-outs as premature. If the Court certifies a class of plaintiffs for this lawsuit, you will have an opportunity to opt out of the litigation at a later time, and the Court will notify you of this at the appropriate time.
>
> You may have received a letter from the defendants describing the lawsuit. The letter is a statement of Defendants' opinion. You should decide independently whether you wish to participate in this lawsuit as a class member and whether you wish to have Plaintiffs' attorney, another attorney, or no attorney represent you.
>
> You are also notified that The Youthful Tooth, Dr. Alexander, and Dr. Salazar are prohibited by law from retaliating against you for participating in this class action. This means that they may not reduce your work hours, fire you, or otherwise threaten you with retaliation for participating in this case. If you believe you have been retaliated against in connection with this lawsuit, you may wish to contact a lawyer.
>
> Plaintiffs' attorney contact information is: Kevin Woodall of Woodall Law Offices, 560 California Street, 16th fl., San Francisco, California, 94101. Telephone: (415) 439-4803.
>
> Defendants' attorney contact information is: Bernadette Bantly, Steven Barrabee, and Peter Finn of Bradley, Curley, Asiano, Barrabee, Abel & Kowalski, PC., 1100 Larkspur Landing Circle, Ste. 200, Larkspur, California 94939. Telephone: (415) 464-8888.

13

In addition to the invalidation of the opt-out declarations and the curative notice, Plaintiffs also request that the Court ban all communications between Defendants and any putative class members regarding this case and require Defendants to provide Plaintiffs with all information and documents relating to the putative class members. However, the standard for an order limiting communications between parties and potential class members is quite high. See Gulf Oil Co., 452 U.S. at 101-02; Kleiner, 751 F.2d at 1205-06. The Kleiner court laid out the criteria for courts to consider to determine whether good cause exists to restrict communication: 1) the severity and likelihood of the perceived harm; 2) the precision with which the order is drawn; 3) the availability of a less onerous alternative; and 4) the duration of the order. Id. at 1206. Here, although the Court is troubled by Defendants' communication with putative class members via the Employee Letter, the severity and likelihood of the harm is not so great as to warrant a complete ban on communications about the case at this time. Although the inflammatory nature of the Employee Letter is clear on its face, Plaintiffs have not provided evidence that any particular putative class member was coerced, and the Supreme Court calls for a clear record and specific findings in order to limit communications. Gulf Oil, 452 U.S. at 101-02. The Court has invalidated the signed opt-out declarations and all putative class members will receive the curative notice that describes the situation in more neutral terms. These remedial measures should be sufficient to eliminate future coercive communications regarding this case. Similarly, the Court finds that it is not necessary to order the disclosure of all communications between Defendants and putative class members at this time. The Court cautions Defendants and their counsel that it will take seriously any further claims of coercive, inflammatory, or one-sided communications in this case, and that any retaliation against workers for participating in this case would constitute a violation of the Court's order and could lead to the imposition of sanctions.

Plaintiffs' motion is granted in part and denied in part.

**III.    Joint Letter Brief re Discovery Disputes  (Docket No. 107)**

The Court issued an order on February 14, 2014 that addressed many of the issues in the case

1  and ordered production of documents related to the potential class of Defendants' employees by
2  March 21, 2014. Docket No. 92 at 9. The order called for the parties to reach an agreement on the
3  contents of such a production and to file a joint letter brief if they could not reach an agreement. <u>Id.</u>
4  The parties have filed a joint letter brief outlining several discovery disputes.

5  Defendants have agreed to provide the following with respect to the putative class members:
6  1) a list identifying employees by name, last known address, job title, office worked, hourly rate,
7  date of hire, and date of termination; 2) all timesheets for each employee from April of 2009 to the
8  present; 3) payroll summaries for each employee from April of 2009 to the present; 4) wage
9  statements for each employee from April 2009 to the present; 5) all requested documents regarding
10 meal and rest periods not already produced; and 6) all employee wage complaints. Docket No. 107
11 at 2. The issues in dispute are as follows:

13 <u>Phone Numbers of Putative Class Members</u>

15 Defendants have refused to provide phone numbers for the putative class members. In its
16 Order of February 14, 2014, the Court noted that "names, addresses, and phone numbers are quite
17 standard for pre-certification disclosures in the class action context." Docket No. 92 at 8-9.
18 Plaintiffs point out that they have agreed that the information could be subject to a protective order
19 that would make sensitive information "attorneys' eyes only" and have also agreed that documents
20 could have names and identifying information redacted and substituted with generic names, which
21 would be sufficient to compare the documents for class certification purposes. Docket No. 107 at 3.
22 Defendants cite cases recognizing that personnel records are sensitive. <u>See, e.g.</u>, <u>Torres v. CSK</u>
23 <u>Auto, Inc.</u>, No. 03-113, 2003 WL 24330020, at *3 (W.D. Tex. Dec. 17, 2003) (noting that there are
24 privacy concerns implicit in information derived from personnel records and ordering that the
25 defendant itself issue a notice to its employees allowing them to "opt in" to a prospective class).
26 However, the case that Defendants cite for the proposition that only names and addresses should be
27 produced at this stage, <u>Morden v. T-Mobile USA, Inc.</u>, No. 05-2112, 2006 WL 1727987, at *2-3
28 (W.D. Wash. June 22, 2006), never addresses phone numbers.

15

The Court has already acknowledged that personnel records are sensitive and stated that it is typical for phone numbers to be disclosed at this stage. In <u>Puerto v. Superior Court</u>, 158 Cal. App. 4th 1242,1259 (2008), the California Court of Appeals held that it was an abuse of discretion for the trial court to prohibit the disclosure of the addresses and phone numbers of witnesses, employees of the Wild Oats Supermarket. Defendants shall disclose the phone numbers of putative class members, subject to a protective order that makes them attorneys' eyes only.

"Opt-out" Employees

Defendants maintain that the employees who have signed the opt-out declaration provided to them by Defendants should not have any personal information provided to Plaintiffs' counsel. As discussed above, the opt-out declarations submitted by Defendants are invalid, and the information must be provided for all putative class members, even those who signed an opt-out declaration.

Special Interrogatory Responses

Defendants have refused to produce responses to two of Plaintiffs' special interrogatories, which seek the legal name of the employer and information regarding why putative class members received "bonuses" on a regular basis. Plaintiff claims this information is necessary to determine whether claims exist under Labor Code § 226 and whether Defendants may have unlawfully paid bonuses rather than wages. Defendants state that they have already confirmed that the legal name of the employer is Jeffrey P. Alexander, DDS, Inc. They refuse to provide further responses regarding undefined "bonuses" because Plaintiffs will not identity the specific person and bonuses they are referring to.

The Court hereby orders Plaintiff to narrow their interrogatory requests regarding bonuses to the named Plaintiffs.

Discovery Related to the Named Plaintiffs

Defendants have agreed to produce all requested documents that have not already been produced related to the named Plaintiffs, and Plaintiffs ask that Defendants provide amended responses to all its discovery requests. Defendants state they have agreed, subject to Plaintiffs' counsel providing a list of missing documents.

The Court hereby orders Plaintiffs' counsel to provide the list of missing documents. Defendants need not provide amended responses to eight sets of discovery, but rather a single document supplementing the prior responses.

**IT IS SO ORDERED.**

Dated: April 14, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge